WOODMAN v. STAHL.

Ohio Appeals, 6th Dist., Lucas Co.

No. 1915. Decided Jan. 9, 1928.

First Publication of this Opinion.

Syllabus by Editorial Staff.

111. ASSUMPTION—of Risk—829. Negligence.

1. Employe, in continuing use of simple tool after promise by employer to repair same, assumes risk and cannot recover.

2. Word "tool" held to include reins with which horse is guided.

677. JUDGMENTS AND DECREES—Court of Appeals cannot render final judgment in favor of plaintiff in error where trial court was not asked to pass upon sufficiency of petition or evidence.

Error to Common Pleas.

Judgment reversed.

Deeds & Cole, Toledo, for Woodman.

John E. Steele and W. H. McLellen, Jr., for Stahl.

FULL TEXT.

RICHARDS, J.

Charles H. Stahl was the plaintiff in the Court of Common Pleas in an action to recover damages for personal injuries and the trial resulted in a verdict and judgment in his favor for $500.00.

It is urged that the judgment should be reversed for numerous errors claimed to have been committed at the trial, among which are the claim that the petition fails to state a cause of action and that the plaintiff in the trial court assumed the risk. The petition avers in substance that the plaintiff was employed by Albert B. Woodman to care for his peach orchard on Catawba Island, and in the performance of that work was supplied with a horse and wagon with which to haul the peaches. He avers that about October 4, 1925, while he was using the horse, the right line of the harness broke and plaintiff ran to the head of the horse to catch the bridle and the horse stepped upon him and struck him, resulting in his injury. He further avers that he was using the harness which had been designated by the defendant and had informed the defendant shortly before October 4, 1925, that the horse was hard-bitted and the harness was old, rotten and weak and the lines not strong enough to control the horse, and requested the defendant to have the harness, and especially the lines, repaired, and he avers that the defendant promised to replace the harness and lines in a short time and told plaintiff that until he could replace them he should continue to use them.

Plaintiff avers that the defendant did not regularly employ more than one person and had not complied with the laws of Ohio providing for compensation of employes injured in the course of their employment.

Counsel for plaintiff in error insist that the defective harness and lines or reins, and the promise to repair, bring the case within the principle announced in McGill v. The Cleveland & Southwestern Traction Co., 79 Ohio St., 203, commonly known as the stepladder case. In that case it was held that an employe, in continuing the use of a simple tool, after a promise by the employer to repair the same, assumed the risk and could not recover. The case cited collects the authorities and gives the reasons for the rule under which an employe assumes the risk of injury in case of a promise to remedy a defect in a simple tool or appliance. In that case the court cite with approval Meador v. Lake Shore & Michigan Southern Railway Co., 138 Indiana, 290, in which it was held that a common laborer who uses agricultural implements to which he is accustomed and in regard to which he has complete knowledge, in working upon a farm, is not entitled to recover for injuries suffered after making complaint to the employer that the implement or utensil is defective, and is injured by continuing his work after a promise of the employer to repair the defect. The word "tool" has a very broad meaning and has been defined as any instrument or apparatus necessary to a person in the efficient prosecution of his trade or calling, and within that definition the reins with which a horse is guided may well be an apparatus or appliance.

G. C. Section 6245 excepts simple tools as being implements or apparatus in the use of which the employe assumes the risk, and is not permitted to recover. Clearly the petition does not state a cause of action and it is apparent that the plaintiff assumed the risk of his own injury.

No demurrer was filed to the petition and no objection was made at the opening of the trial to the introduction of any evidence and no motion was made at the conclusion of all of the evidence to direct a verdict for the defendant, nor was the trial judge requested to instruct the jury to return a verdict for the defendant. It is true that a motion to direct the jury to return a verdict in favor of the defendant was made at the conclusion of the evidence offered on behalf of the plaintiff, but that motion was not renewed at the close of all the evidence and therefore must be deemed to have been waived.

Cincinnati Traction Co. v. Durack, Admr., 78 Ohio St., 243;

Zanesville v. Stotts, 88 Ohio St., 557;

Youngstown & Suburban Railway Co. v. Faulk, 114 Ohio St., 572, 578:

We call attention to Hogan v. Baltimore & Ohio Railroad Co., 1g Fed. (26) 739.

While it is necessary to reverse the judgment in this case because the petition fails to state a cause of action and because the plain-

(Continued on Page 93)

## PUBLISHER'S COLUMN

# The Ohio Law Abstract

Entered as second class matter, February 28, 1923, at the Post Office, Cleveland, Ohio under the Act of March 3, 1879.

Issued Every Saturday          50 Weeks of the Year

### SUBSCRIPTION PRICES AND TERMS

Weekly Edition, One Year (50 issues) Payable in
Advance ..................................... $15.00
Discount for advance payment $3.00, making the
net price ..................................... 12.00
Including Quarterly Digest, to paid subscribers,
no extra charge.
Including Binding of Weekly Parts at end of year,
if paid in advance, net....................... 13.50
Including One Annual Digest, at end of year, and
binding of weekly parts, paid in advance, net.. 16.00
Including Cinque Digest and Year's Subscription..$18.00
Single Numbers ............................... .35
Receiving Abstract after expiration date, considered as authorized continuation of subscription.

### THE LAW ABSTRACT COMPANY
Office, Editorial Rooms and Library, 13916 Euclid Ave.
Cleveland, O.

### STAFF

Sam H. Torrey.....................Circulation Manager
Jay F. Laning.........................Business Director
Sheldon R. Laning....................Editorial Director

### VERY WELL SAID

The Abstract takes pleasure in quoting the following from the able opinion of Judge Mauck in Kent v. Rowley, 5 Abs. 91.

"One of the mysteries of human nature is that people who know that they do not know enough to shoe a horse or pull a tooth, feel themselves perfectly competent to judge of the effects of a contract that may deprive them of all their property."

### LANDON v. STATE.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8545.   Decided Dec. 19, 1927.

First Publication of this Opinion.

Syllabus by Editorial Staff.

225.   CHARGE OF COURT—1004. Receiving Stolen Goods—Where several defendants are jointly indicted for receiving stolen goods, charge that "if you are satisfied beyond a reasonable doubt that any one of them did receive or conceal this Ford coupe, or any part of it which has been stolen, knowing it to have been stolen, then you will return a verdict of guilty" held erroneous.

Error to Common Pleas.
Judgment reversed.

Nathan Herstam, Cleveland, for Landon.
M. H. Meyer, Cleveland, for State.

FULL TEXT.

SULLIVAN, PJ.

The defendant Landon was indicted and convicted in the court below of the crime of receiving stolen property and was sentenced to one year in the penitentiary, and he prosecutes error that, under the rules of criminal law, the verdict is clearly and manifestly against the weight of the evidence; that the court committed error in its charge, and that evidence inadmissible was introduced in evidence, to which due exception was made.

We have reviewed the record and have come to the conclusion, employing the rule as to reasonable doubt, upon the question of scienter, that the verdict and judgment are clearly and manifestly against the weight of the evidence. The evidence should be of such a nature, in order to convict in a case like the one at bar, especially upon the vital question of knowledge, that its import and substance are convincing beyond the existence of a reasonable doubt. To this degree, knowledge that the property was stolen, must extend.

It is our unanimous judgment that the proof does not reach that degree required in cases of this character in order to convict. It should not only be credible, as is necessary in such cases, but it should be convincing to the degree required by the criminal law, and this situation should be reasonably apparent on the face of the record.

In this case this defendant is charged jointly with other defendants in an indictment alleging larceny and the receiving of stolen property. Exception is taken to the following part of the charge:

"This third count charges, in substance, that these four men, knowing this Ford coupe to have been stolen from Charles Boland, did receive and conceal this automobile, with intent to defraud Charles Boland.

"On this third count the State must prove that this was stolen; that these defendants, or either one or more of them knew it was stolen; that these defendants, or either one or more of them did either receive, or aid, or assist, or procure in the receiving and concealing of this Ford coupe, or any part of it, which had been stolen, knowing it to have been stolen, if you are satisfied beyond a reasonable doubt that anyone of them did receive or conceal this Ford coupe, or any part of it which had been stolen, knowing it to have been stolen, then you will return a verdict of guilty. In this connection you are also charged to bear in mind the instructions which I have given you as to aiding, abetting or procuring. That is, if one, or more, of the defendants did aid, abet or procure in the doing of the act, then you will return a verdict of guilty as against all that you are satisfied beyond a reasonable doubt did aid, abet or procure in the doing of this unlawful act."

The complaint is made that this charge is confusing and that its natural result was to mislead the jury in that, inasmuch as several defendants were charged jointly, the court did not distinctly and specifically make application of the facts in such a manner as to apply specifically to the defendant or defendants to whom they related. The following language so indicates:

"If you are satisfied beyond a reasonable doubt that anyone of them did receive or conceal this Ford coupe or any part of it which had been stolen, knowing it to have been stolen, then you will return a verdict of guilty."

One of the interpretations which a jury might gather from this sentence is that if any one of the defendants received the property knowing it to have been stolen, that a general verdict of guilty might result.

It is our unanimous conclusion that this is error prejudicial to the defendant.

There appears in the record a detail of certain alleged facts and circumstances which are apparently admitted on the basis that a conspiracy existed among the defendants. We think the evidence falls short of proving a conspiracy to the extent that the evidence of the facts and circumstances became competent in the absence of the plaintiff in error, and all evidence of this nature that was admitted, which related to transactions which took place in his absence, is incompetent, and that by reason of its admission prejudicial error was committed by the court below. and for this reason the judgment is reversed and the cause remanded for further proceedings according to law, on the ground that the judgment and verdict are clearly and manifestly against the weight of the evidence; that there was error of law in the admission of evidence without a sufficient showing of conspiracy, and that there was prejudicial error in the charge as noted herein.

(Levine and Vickery, JJ., concur.)

---

LOZIER et v. SEARS et.

Ohio Appeals, 5th Dist., Ashland Co:

No. 167. Decided Dec. 15, 1927.

Syllabus by Editorial Staff.

755. MECHANICS' LIENS—
1. Owner entitled to decree canceling liens of all claimants who have failed to file sworn statements and other statements and certificates provided for in 8312 GC.

2. Same requirement made as to both contractors and sub-contractors.

3. Material man not required, as condition precedent to securing lien, to serve notice on owner as, provided in 8312 GC.

704. LAND CONTRACTS—Contractee cannot recover money expended for improvements except by showing extent to which value of property has been incrased.

Error to Common Pleas.

Reversed in part and affirmed in part.
M. V. Semple, Ashland, for Lozier et.
T. J. McCray, Mansfield, for Sears et.
J. F. Henderson, Ashland, for Daniel Ernst, etc.
Clyde C. Sherick, for Ohio Public Service Co.
J. L. Mason, Ashland, for C. W. Thomas.

STATEMENT OF FACTS.
Prior to March 8, 1926, J. A. Lozier and Mabel Lozier were the joint owners in fee simple of a certain twelve room dwelling house located in the city of Ashland, Ohio. The property was occupied by the Loziers as a home and there was also located thereon some three or four, two and three room suites, which were leased to various parties for residential purposes.

On March 8, 1926, defendant in error, John Sears, entered into a land contract with the Loziers, agreeing to purchase this property for $9,500, $1,000 to be paid as a down payment, $500 on the first day of April, 1926, and the balance of $8,000 to be paid in semi-annual installments. This land contract is offered in evidence and is a part of the record in this case. It bears date of March 8, 1926, and evidences the fact that $1,000 was paid at the time of the purchase, and that the further sum of $500 was to be paid in cash on April 1, 1926. It also contains the usual provisions with reference to default and provides that vendees should assume and pay any and all further general taxes or special assessments then or thereafter levied and which would become payable after the date therof.

It is uncontradicted that the vendees did pay the further sum of $500 on the 1st day of April, 1926, but that the said vendees failed to pay the general taxes, also the special assessment for the last half of the year 1925 and the general and special assessment for the first half of the year 1926, and that vendors paid both of said installments of tax as aforesaid and have never been reimbursed.

About a week after the vendees had taken possession of the residence, they commenced to make extensive repairs thereon. Possibly three or four weeks after the 1st of April, 1926, they proceeded to enter into contracts with various contractors in the City of Ashland incident to the wrecking of an old barn and building a two-story restaurant building upon the south-westerly corner of the lot.

It is admitted, upon the part of the vendors, that they had knowledge of such work of construction upon the new building but that they had reasonable ground to believe, the same as all the various contractors, that Sears was in a position to pay therefor. It appears that said new building was completed and ready for occupancy along the latter part of August or the first of September, 1926.

Cross-examination of all the respective lien claimants brought forth the answer that none of them understood that they were in any way working or furnishing materials for the Loziers, and that, in fact, all of them believed that the premises were owned by the vendees and that they also presumed that they were working for the vendees until the time came to attempt to perfect the liens in question, and that, therefore, upon advice of counsel, an attempt was made to perfect these liens, based upon contracts, as averred, with John Sears as agent for the said plaintiffs in error. All lien holders further testify that all instructions which they received were issued direct from the vendees and that the said plaintiffs in error never gave any instructions nor, in fact, in any way discussed with any of the lien claimants any matters relative to the work or materials in question.

The record discloses that all of the within named lien claimants were principal contractors, with one exception, namely the defendant in error Herman J. Schmitz, who was simply a material man; that all of said lien claimants filed affidavits for mechanics' liens with the Recorder of Ashland County with itemized statements of their various labor and materials attached thereto, and also served a copy of such affidavit, but without an itemized statement attached thereto, upon either the plaintiff in error J. A. Lozier or plaintiff in error Mabel Lozier; none of said lien claimants,

with the exception of The Ohio Public Service Co. having served a copy of such affidavit upon both of the said plaintiffs in error. Also the evidence is uncontradicted that none of said lien calimants at any time served or caused to be served upon either or both of the plaintiffs in error the preliminary notice in form as is provided in Section 8312 of the General Code of Ohio.

A careful examination of the record in this case shows that none of the lien claimants have, in their respective answers, averred any doctrine of subrogation or estoppel, nor have the said lien claimants attempted, in their testimony, to prove any agency relation as between the said defendant in error John Sears and either or both of said plaintiffs in error.

The findings, order, judgment and decree of the Court of Common Pleas were to the effect that the mechanics' liens of the respective named defendants in error were properly perfected in accordance with the mechanics' lien laws of the State of Ohio; that the premises are as described in detail in the Amended Petition of said plaintiffs in error and should be sold as upon execution, and that from the proceeds of such sale should first be paid the accrued taxes as also the special assessments; second, to the plaintiffs in error the amount of moneys paid by the said plaintiffs in error which represented both the general taxes and also the special improvement assessments for the last half of the year 1925 as also the first half of the year 1926; third, the Court costs incident to the within proceedings; fourth, the various and respective asserted mechanics' liens of said defendants in error; fifth, to the said plaintiffs in error the balance of said purchase money as due upon the land contract, with interest; and sixth, to the said defendants in error John Sears and Carrie N. Sears the residue, if any there might be. The court further found that John Sears and Carrie Sears had forfeited their rights under the land contract; that as a result the land contract had become null and void and the plaintiffs in error were entitled to have their title to such premises quieted as against any and all rights, claims and demands as asserted by John Sears and Carrie Sears.

### OPINION OF COURT.

The following is taken, verbatim, from the opinion.

LEMERT, J.

Section 8312 of the General Code provides that the original contractor shall, whenever any payment of money shall become due from the owner, part owner or lessee, or whenever he desires to draw any money from the owner, part owner or lessee, under such contract or upon the written demand of any mortgagee, make out and give to the owner, part owner, lessee or mortagee, or his agent, a statement under oath, showing the name of every laborer in his employ who has not been paid in full, and also showing the name of every sub-contractor in his employ, and of every person furnishing machinery, material or fuel, and giving the amount, if any, which is due or to b come due to them or any of them, for work done or machinery, material or fuel furnished to him, which statement shall be accompanied by a certificate signed by every person furnishing machinery, material or fuel, to him, which statement under oath and certificate may be in substantially the following form.

Section 8312 further provides that until the statements provided for in this section are made and furnished in the manner and form herein provided the contractor shall have no right of action or lien against the owner, part owner or lessee, on account of such contract.

In addition to filing a proper affidavit for a lien as provided in General Code 8314 and serving notice as provided in General Code 8315 such contractor must, when money becomes due him from the owner, give to the owner the sworn statement and other statements and certificates provided for in General Code Section 8312. If he fails to do so and until he does so, the contractor shall have no right of lien against the owner on account of such contract. Such statements must be filed with the owner before the time expires in which the claimant may perfect a lien. This same requirement is made as to both contractors and sub-contractors.

In Vol. 115 Ohio State, page 555 the court holds that "it is true a material man does not need to comply with the provisions of Section 8312 of the General Code, nevertheless that Section applies to a sub-contractor," and uses the following language in such determination: "the provisions of 8312 GC. requiring notice to be served upon the owner of a structure being erected under contract apply to the contractor and sub-contractors but not to the material men.".

As to the various claims as are asserted in the answer and cross-petition of the defendants in error John Sears and Carrie N. Sears, it is our view that all of such claims are based upon a theory that there was an increase in the market value of the premises in question by virtue of the acts and deeds of such defendants in error, that as a result thereof they would be entitled to a judgment as against the said plaintiffs in error, but from a careful examination of the record in this case, we find there is no testimony in the record to the effect that the market value of the premises in question was any greater, and in fact there is some question if it is as great as it was at the time of the entering into the land contract on March 8, 1926, and if this is the fact, it is our understanding of the law of the State of Ohio that the defendants in error John Sears and Carrie N. Sears have no right of action or demand as against the said plaintiffs in error, and that being true that they could therefore expect no recovery upon their answer and cross petition in this proceeding.

Without quoting further in this finding, we are of the opinion that the various lien claimants in this case, with the exception of Herman J. Schmitz, have not complied with the law as hereinbefore laid down in perfecting their several liens and that, upon the record in this case, the defendants in error John Sears and Carrie N. Sears have not made such showing that would entitle them to recover upon their answer and cross-petition. We find, as to the defendant in error, Herman J. Schmitz, that a material man is not required, as a condition precedent to securing a lien, to serve notice on the owner as provided in 8312 GC.

Holding the views as hereinbefore expressed, the judgment of the Common Pleas Court is reversed as to John Sears and Carrie N. Sears, defendants in error, and judgment entered in

favor of plaintiffs in error against them, and each of them. Judgment of Common Pleas Court reversed as to defendants in error Heter & Kirkpatrick, a partnership, Garfield Sears, C. W. Rollins and the Ohio Public Service Company, a corporation and judgment entered in favor of plaintiffs in error against defendants in error therein, and each of them; judgment of Common Pleas Court affirmed as to lien of defendant in error Herman J. Schmitz.

(Lemert, Shields and Houck, JJ., concur.)

---

GORDON v. STATE.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 8038. Decided Dec. 5, 1927.

**First Publication of this Opinion.**

Syllabus by Editorial Staff.

**1004. RECEIVING STOLEN GOODS—**
Evidence, to support conviction, must show that goods came into possession or custody of accused, or that he assumed control thereof.

Error to Common Pleas.

Judgment reversed.

Dennis J. Lyons, Cleveland, for Gordon.

E. C. Stanton and Maurice J. Meyer, Cleveland, for State.

FULL TEXT.

PER CURIAM.

Plaintiff in error was convicted in the Common Pleas Court of the crime of receiving stolen property. The evidence discloses that on November 22, 1926, one Israel Margolin, drove his Nash sedan automobile from his home to the County Court House in this County, where he parked it and from which place it was stolen between the hours of nine A. M. and eleven thirty A. M. This automobile was found in an alley at 4819 Lorain Avenue on December 2, 1926. The place where the car was found was adjacent to a residence owned by Morgan Kane. As a result, Mike Whitman, James Emerson, John Smith, Morgan Kane, Roy Schneider and George Gordon were arrested and later indicted for the crime of automobile stealing. The indictment also contained a count for operating an automobile without the consent of the owner and for receiving stolen property.

When the case was tried before the Common Pleas Court, the court withdrew from the jury all the other counts in the indictment, in so far as plaintiff in error was concerned, but submitted the case to the jury on the count in the indictment charging the crime of receiving stolen property.

The jury returned a verdict finding the plaintiff in error guilty upon said count in the indictment.

It is the contention of the State that a Nash automobile was stolen by John and Mike Kashman; that it was done with the knowledge and consent of the plaintiff in error Gordon; that the arrangements for the selling of the car were made at the plaintiff in error's roadhouse and in his presence and with his complete knowledge, and that he received or was to receive a share of the profits to be derived from the sale of the automobile.

A careful examination of the record discloses that the Nash car was at no time turned over to plaintiff in error. John Kashman, one of the thieves, and who testified against plaintiff in error, was asked:

Q. Who had the Studebaker and Nash at that time, if you know?

A. Me and my brother.

Q. Will you state to the Court and to the jury how much actual money you received from them?

A. We received $175 from Whitman and $150 from Schneider.

Q. Now what was Gordon's share in the deal?

A. Gordon always got the dough and he gave us the split.

Q. How long did you stay at the roadhouse that day?

A. I was there on the 22nd. I came there with the Studebaker and my brother came there with the Nash. That is before we met the boys.

Q. What was the first thing you did when you got there, Johnny?

A. Turned over the cars to Whitman and Schneider.

Q. At the time you made the deal with Gordon about the Nash, did you or did you not have the Nash at that time?

A. No, sir.

In order that the defendant be held guilty of the crime of receiving stolen property, there must be some credible evidence showing that the stolen automobile came into the possession or custody of the plaintiff in error, or that he assumed control of it. It is quite clear, from the record, that no such thing occurred. There is no evidence of a credible character showing Gordon received any part of the proceeds from the sale of the stolen automobile. If the State's theory is correct that the Kashman brothers stole the automobile by pre-arrangement with Gordon, then Gordon would be clearly guilty as an accessory to the crime of stealing an automobile, because the act of the thieves would be properly charged to him as if he did it in person, and had the jury found him guilty of the crime of automobile stealing, it is doubtful whether the judgment of the Common Pleas Court could be disturbed upon the record. We are concerned only in the conviction upon the charge of receiving stolen property and nothing else. Whatever arrangements, if any, Gordon had with the thieves prior to the stealing of the automobile by them and thereby making him an accomplice to the act of stealing, would not sustain a conviction of Gordon on the charge of receiving stolen property, in view of the record that the stolen automobile at no time came into his possession or custody, or that he assumed control of it.

Upon the review of the record, we hold that the judgment of the Common Pleas Court is manifestly against the weight of the evidence.

The judgment of the Common Pleas Court is, therefore, ordered reversed and the case remanded.

(Sullivan, PJ., Levine and Vickery, JJ., concur.)

# MONTHLY CASE LAW NOTES

5 OS. 280. Dillingham v. State.
Supporting: Rembrandt v. Cleveland, OA. 5 Abs. 803.

16 OS. 334. Butler v. Peck.
Cited: Nagy v. City of Akron. OA. 6 Abs. 35.

19 OS. 363. Methard v. State.
Followed: Seymour et v. State. OA. 6 Abs. 51.

22 OS. 247. Tootle v. Clifton.
Supporting: Nagy v. City of Akron. OA. 6 Abs. 35.

31 OS. 100.
Followed: Koeborle v. Green. OA. 6 Abs. 56.

31 OS. 398, 343. Railroad v. Commissioners.
Cited: New Boston (Vil.) v. Monk. OA. 6 Abs. 55.

45 OS. 506. Lemon v. Beeman.
Followed: Leanza et v. Barnes Motor Co. OA. 5 Abs. 809.

51 OS. 561. Thatcher v. Watson et.
Followed: Hardin v. Am. Guar. Co. OA. 6 Abs. 3.

52 OS. 215. Norris v. Davis.
Distinguished: Simmer et v. Supreme Council, etc. OA. 5 Abs. 808.

68 OS. 280. Reed v. Loan Co.
Followed: Falls Sav. & Loan Assn. v. Brumit et. OA. 6 Abs. 39.

80 OS. 52. DeBrul v. State.
Supporting: Rembrandt v. Cleveland. OA. 5 Abs. 803.

80 OS. 151. Mason v. Commissioners.
Cited: Nagy v. City of Akron. OA. 6 Abs. 35.

80 OS. 458. Canning Co. v. Zappio.
Supporting: Hardin v. Am. Guar. Co. OA. 6 Abs. 3.

81 OS. 482. Home Building & Realty Co. v. Clasbert et.
Supporting: Hardin v. Am. Guar. Co. OA. 6 Abs. 3.

82 OS. Pfanz v. Humburg.
Supporting: Hrovat v. Krall. OA. 6 Abs. 40.

85 OS. 13. Horton v. State.
Supporting: Rembrandt v. Cleveland. OA. 5 Abs. 803.

91 OS. 211. Walsh v. Thomas Sons.
Cited: Lamports Co. v. Konigsburg. OA. 5 Abs. 810.

91 OS. 415. Arbuckle v. Am. Belting. Co.
Cited: Hardin v. Am. Guar. Co. OA. 6 Abs. 3.

103 OS. 318. Hart v. Andrews.
Cited: Buck v. Smith. OA. 6 Abs. 5.

105 OS. 508. McCafferty v. State.
Followed: Joyce v. State. OA. 6 Abs. 58.

106 OS. 481.
Followed: Koeborle v. Green, OA. 6 Abs. 56.

107 OS. 33. Achaner, Admr. v. Traction Co.
Cited: Reed v. Boone et. OA. 6 Abs. 21.

107 OS. 113. Carey, Admr. v. Conn.
Distinguished: Hrovat v. Krall. OA. 6 Abs. 40.

107 OS. 583. Securities Co. v. Orlow.
Distinguished: Continental Fin. Co. v. Gold Seal Tire Co. OA. 6 Abs. 26.

116 OS. 45.
Followed: State ex Davis v. Indust. Com. OS. 6 Abs. 43.

## OHIO APPEALS

6 Oh. Ap. 140.
Supporting: Stout v. Tobias. OA. 5 Abs. 810.

9 Oh. Ap. 468. Canning Co. v. Weller.
Supporting: Hardin v. Am. Guar. Co. OA. 6 Abs. 3.

10 Oh. Ap. 195, 201. N. Y. C. & St. L. Ry. Co. v. Aigler, Admr.
Cited: Zeis v. Kaechele. OA. 6 Abs. 54.

13 Oh. Ap. 334. Stothfang v. Cinci. Aluminum Cast. Co.

Followed: Cain et v. Matthews Selected Dairies Co. OA. 6 Abs. 8.

27 O. C. A. 326. Henry v. Cleveland.
Followed: Rembrandt v. Cleveland. OA. 5 Abs. 803.

32 O. C. A. 75. Rowland v. State.
Followed: Dodge v. Keller. OA. 6 Abs. 6.

## OHIO LAW ABSTRACT

4 Abs. 299. Conkle v. Bellevue.
Reversed: Conkle v. Bellevue. OS. 6 Abs. 42.

5 Abs. 185. Tumey v. State.
Distinguished: Dugan v. State. OS. 6 Abs. 42.

## OHIO CIRCUITS

27 C. D. (27 CC.) 133. Mack v. Eckerlin.
Distinguished: Stout v. Tobias. OA. 5 Abs. 810.

## OHIO COMMON PLEAS

19 O. N. P. (N. S.) 305. Heald v. Cleveland.
Followed: Sapienza v. Fertel. OA. 5 Abs. 809.

## OTHER REPORTS AND TEXT BOOKS

23 Am. Law Rep. 133. Braunstein v. McCory Stores Corp.
Cited: Jas. H. Herron Co. v. Jones. OA. 6 Abs. 37.

35 C. J. 1036.
Supporting Stout v. Tobias. OA. 5 Abs. 810.

167 Fed. Rep. 342. Bliss v. Anaconda Copper Min. Co.
Supporting: Cain et v. Matthews Select. Dairies Co. OA. 6 Abs. 8.

10 R. C. L. 1080.
Cited: Frank Co. v. Streich. OA. 5 Abs. 811.

16 R. C. L. 894.
Followed: Stout v. Tobias. OA. 5 Abs. 810.

23 R. C. L. 1390.
Cited: Frank Co. v. Streich. OA. 5 Abs. 811.

27 R. C. L. pg. 1151, Sec. 79 et seq.
Cited: Nagy v. City of Akron. OA. 6 Abs. 35.

---

## AMERICAN LAUNDRY MACH. CO. v. DANEMAN et.

Ohio Appeals, 1st Dist., Hamilton Co.

No. 3059.   Decided July 5, 1927.

First Publication of this Opinion.

Syllabus by Editorial Staff.

106.   ASSIGNMENTS—1.   Sect. 6346-12 GC. limits assignment of wages to 50% of wages earned and to be earned.

2.   Assignment of full amount allowed held binding upon employer although not accepted by him.

Error to Common Pleas.
Judgment affirmed.

Joseph S. Rohrer, Cincinnati, for Laundry Mach. Co.

H. H. Sundermann, Cincinnati, for Daneman et.

### FULL TEXT.

HAMILTON, PJ.

One Edward Murphy was an employee of The American Laundry Machinery Company, plaintiff in error here.   While so employed, he made an assignment of fifty per cent of his wages due from The American Laundry Machinery Company and wages which may hereinafter for the period of thirty-six weeks become due, to the Spencer Jewelry Company. The assignment of fifty per cent of the wages

due or to become due was for the period of thirty-six weeks or, in the alternative until the indebtedness to the Spencer Jewelry Company in the sum of $137.87, was paid in full. This assignment was executed July 19, 1924. Murphy made three small payments to the Spencer Jewelry Company, and then ceased to pay. Thereupon, on December 1, 1924, the Spencer Jewelry Company filed with The American Laundry Machinery Company the assignment of the wages, executed by Murphy to it, together with an attached statement of the amount due; that the Machinery Company refused to honor the assignment. Whereupon, the Jewelry Company brought suit in the Municipal Court against The American Laundry Machinery Company to recover the wages assigned by Murphy to it.

The trial in the Municipal Court resulted in a judgment in favor of the Jewelry Company and against The American Laundry Machinery Company. The American Laundry Machinery Company prosecuted error to the Court of Common Pleas, which court affirmed the judgment of the Municipal Court. Error is prosecuted here, seeking a reversal of those judgments.

The defense was that the assignment was merely as a security, to secure the payment of monthly installments of indebtedness to the Jewelry Company, and the further defense that the moneys earned, covered by the purported assignment, had all been paid to the assignor.

Stripped of all technicalities and verbiage, the question here amounts to this: Can an action at law be maintained against an employer for an assignment of fifty per cent of the wages of an employee, which assignment is not accepted by the employer?

Much has been said in the brief of the plaintiff in error and the brief of the amicus curiae of the cases decided under the common law bearing on the question of wage assignments. It is conceded to be and is the law that under the common law rule, an assignment of the whole of an employee's wages is valid without the acceptance of the employer.

It is further the law that under the common law rule an assignment of a part of an employee's wages is valid only on acceptance by the employer.

The assignment in question was of fifty per cent of the wages, and it is argued that this being an assignment of but a part of the wages, that, under the rule of law, acceptance on the part of the employer was necessary to make it binding on the employer.

The question was settled and would probably not be here except for the passage of Section 6346-12 General Code of Ohio. The legislature saw fit, under the police power, to limit the assignment of wages to fifty per cent of the wages earned and to be earned. The reasons are apparent and were for the protection of the employee's family. The reasons for the holding of the Courts that only in case the whole of the wages were assigned could an action be maintained, without acceptance by the employer, was to avoid splitting up causes of action and the annoyance of multiplicity of suits. The statute provides that an assignment of more than fifty per cent of the personal earnings of the assignor shall be void. So that we have no difficulty with the rule in any sum in excess of fifty per cent of the earnings. The assignment in

question was of the full fifty per cent, and within the law, no more, no less.

The protection of the employer against multiplicity of suits, which, as above stated, was the only reason for the holding of the courts under the common law, is taken care of. The reason for the rule is just as cogent as the rule itself.

On the question suggested in the brief that the assignment was a mere lien, cognizable in equity only, it is sufficient to say that the instrument has none of the ear marks of any such lien. It is an assignment, or it is nothing.

Our conclusion is that the assignment is a valid assignment, and that the judgment of the Municipal Court, and of the Court of Common Pleas, affirming that judgment, were correct.

(Cushing, J., concurs.)

---

DICKEN et v. STRASBURGER.

Ohio Appeals, 6th Dist., Wood Co.

No. 407. Decided Dec. 5, 1927.

First Publication of this Opinion.

Syllabus by Editorial Staff.

485. EXECUTORS AND ADMINSTRATORS—516. Fees and Costs—Attorneys, for special administrator appointed under provisions of 10619 GC., not entitled to fee for services rendered in connection with litigation involving contest of will.

480. EVIDENCE—Filing of statement by attorney for special administrator appointed under provisions of 10619 GC. no bar to consideration of evidence tending to show valuable services rendered by such attorney in addition to services charged for in such statement.

Error to Common Pleas.

Judgment reversed.

Edward H. Fries, Bowling Green, for Dicken et.

E. R. Harrington, Bowling Green, for Strasburger.

FULL TEXT.

RICHARDS, J.

Jacob Strasburger, a resident of this county, died leaving an instrument claimed to be his last will and testament. Litigation arose as to the validity of the instrument as a will, and that litigation was carried to the Supreme Court of the state. During the pendency of the litigation Charles F. Dicken was appointed special administrator of the estate under the provisions of Section 10619, G. C. The provisions of that section and of Section 10621, G. C., make it the duty of a special administrator to collect and preserve the effects of the deceased for the executor or administrator who may be thereafter appointed.

The special administrator employed Edward M. Fries, an attorney at law, to represent him. A part of the duties which fell to the administrator consisted in the conducting of a business which had been operated by the decedent. The litigation relating to the will ended by a determination that the instrument was not valid as a will. Thereupon the special administrator filed his account in the Probate Court disclosing receipts of more than $20,000.00 and various expenditures, among which was an item of $403.90 paid to his attorney for services and expenses. This payment was based upon a written statement of legal services made

by the attorney, which included items for services rendered in the litigation relating to the will, and other items for services apparently rendered for the special administrator in aiding him to collect and preserve the assets of the deceased. No specific charges are made for the seperate items, but the amount charged is contained in one item of $403.90 for the entire services.

Exceptions were filed in the Probate Court to the administrator's account, it being contended that he had no right to pay the attorney for any services relating to the litigation arising over the alleged will. The case was tried in the Court of Common Pleas de novo on appeal by the special administrator from the judgment rendered in the Probate Court. On trial in the Court of Common Pleas that court adjudged that the administrator was not entitled to credit for any amounts paid for serivces in the litigation over the alleged will, but allowed a credit of $100.00 for the other services rendered by the attorney, and this proceeding in error is brought to secure a reversal of that judgment.

On the trial of the case the attorney who represented the special administrator testified to the rendition of various services for the benefit of the estate in and about conserving the assets of the estate in addition to the statement of legal services which he had filed with the special administrator. After the evidence was all introduced, the court by its order excluded from consideration all of the evidence offered on behalf of the administrator which showed the rendition of services not set out in the bill filed in the Probate Court, and to this ruling exceptions were taken.

This court is of the opinion that in excluding from consideration all such evidence the trial court erred to the prejudice of the administrator. The exclusion could only have been on the theory that by rendering a statement of services to the administrator the attorney was estopped from making any additional claim, or that he had conclusively waived the right to compensation for any services not set forth in the statement filed and that the disbursement by the administrator could not be justified by proving additional valuable services which were omitted from the bill, regardless of the cause of such omission. That, of course, could not be the rule of law. Undoubtedly when the payment was sought to be justified by proving additional services, the parties would be confronted, and properly so, with the statement for services theretofore rendered, and that statement would be an admission against interest competent in evidence, but it could not prevent the court from considering the evidence as to the rendition and value of any other proper services, if there were such. The court should have weighed and considered all of the evidence relating to services rendered by the attorney for the benefit of the estate in aiding the special administrator to conserve the assets of the estate.

While the statement of legal services filed with the administrator is attached to his account, it does not appear to have been offered in evidence and until so offered it would not properly be before the court. We do not understand that any written, itemized statement was required to have been filed by the attorney or by the special administration.

Of course the estate was not bound by any contract which had been made by the special administrator with the attorney. Even in the case of a general administrator or executor, such contract is not binding on the estate. Trumpler, Admr. et al. v. Royer, et al., 18 Ohio App., 151.

The trial court, however, was right in disallowing the claim for services in so far as the charges were for services in litigation growing out of the alleged will. The special administrator was not concerned in that litigation and was not even a party thereto.

For the error in excluding evidence relating to the additional services, the judgment will be reversed and the cause remanded for a new trial.

(Williams and Lloyd, JJ., concur.)

---

FIDELITY & DEPOSIT CO. v. CLAYPOOL et.

Ohio Appeals, 4th Dist., Ross Co.

Decided Dec. 8, 1927.

**First Publication of this Opinion.**

Syllabus by Editorial Staff.

1017. REMEDY—473. Estates — Where estate consists solely of money claimed to have been stolen from bank and Fidelity Company, under claim of subrogation, elects to recover money judgment rather than attempt to pursue stolen funds, such company cannot, by exception to account of administrator, recover entire estate.

Error to Common Pleas.
Judgment affirmed.

George B. Bitzer and Earl B. Cameron, Chillicothe, for Fidelity Co.
Garrett S. Claypool and John P. Phillips, Jr., Chillicothe, for Claypool.

FULL TEXT.

MAUCK, J.

Garrett S. Claypool and John P. Phillips, Jr., as administrators of the estate of C. V. Stewart filed their first and final account of distribution in the Probate Court showing the receipt by them of $2,004.00 and such disbursements for costs, expenses, funeral expenses, etc., as to reduce the net estate to $1,258.47. To this account the Fidelity and Deposit Company of Maryland filed exceptions, representing itself as a creditor of the estate, its exceptions going to every item of the account showing an expenditure or charge against the estate, and claiming that the whole $2,004.00 should be paid it free of all charges. After a hearing in the Probate Court the case was appealed to the Common Pleas where the exceptions were overruled. Error is prosecuted to this court from that judgment of the Common Pleas.

The bill of exceptions consists solely of documentary evidence, from which it can be gathered that the decedent, Stewart, had stolen certain money from a Columbus bank and that the exceptor had issued a protective policy to that bank and had made good the amount stolen. Stewart was either killed or killed himself shortly after the robbery of the bank. $2,004.00 was found on his person and possession of it was taken by the Chief of Police of Chillicothe. Thereafter, at the instance of the

insured bank, an application was made to the Probate Court of Ross County, which court by favor of Section 10625 G. C. appointed Messrs. Claypool and Phillips administrators. Thereafter the exceptor presented to the administrators for allowance as a debt against the estate a claim for the amount which it had paid to the bank by reason of its policy, claiming to be subrogated to the bank's rights in the premises. This claim was disallowed, whereupon the exceptor brought an action at law against the administrators alleging that the money which the chief of police had taken from the body of the decedent and turned over subsequently to the administrators was the identical money stolen from the bank or a part of that which was stolen. A money judgment was sought against the administrators. Upon issue joined the plaintiff in that case obtained a verdict from the jury in the sum of $2,004.00 and judgment was entered upon that verdict in the following language:

"It is therefore considered by the court that the said plaintiff, Fidelity and Deposit Company of Maryland, recover from the said defendants, Garrett S. Claypool and John P. Phillips, Jr., as administrators of the estate of V. C. Stewart, deceased, the said sum of two thousand and four dollars ($2,004.00) as heretofore by the verdict of the jury found due it, with interest from the 8th day of June, 1923, together with its costs herein expended."

Part of the argument of the plaintiff in error seems to go to the claimed illegality of the possession of this money by these administrators. But as the administrators were appointed upon the application of the bank to whose claim the fidelity company was subrogated, and as the fidelity company presented to those administrators a claim predicated upon the bank's rights to the money and thereafter recovered a money judgment for the money claimed to have been appropriated by the administrators' decedent, and as in this present proceeding the fidelity company in its exceptions alleged itself to be a creditor of the decedent and now claims as such, no serious consideration can be given to the collateral attack made upon the administration itself.

It is claimed further that these administrators have the identical money that was stolen from the bank and that that fact was fixed by the judgment recovered by the fidelity company against the administrators. That position is unsound. What the fidelity company recovered was not a right to specific money but a money judgment in compensation for money that had been stolen from the insured bank. Whether the bank, or the fidelity company when subrogated to its rights, could have replevined the money claimed to have been stolen or whether after that money had changed its character by having been deposited in a bank a trust could have been asserted in it in a proceeding in equity can not now be determined. With these two possible remedies available to the bank and the fidelity company they choose to recover a money judgment rather than to attempt to pursue the stolen funds. Having elected to accept a personal judgment they are bound by it, and that personal judgment had no dignity superior to any other valid claim against the estate. Albright v. Meredith, 58 O. S. 194. There is, consequently,

no merit in the claims now made by the plaintiff in error.

The Probate Court, and the Court of Common Pleas by appeal, had authority under Section 10714 G. C. to distribute the estate in question, and there is nothing in the bill of exceptions to indicate any error in the order of distribution made thereunder.

(Middleton, PJ., concurs.)

---

## KENT v. ROWLEY et.

Ohio Appeals, 4th Dist., Scioto Co.

Decided Nov. 30, 1927.

**First Publication of this Opinion.**

Syllabus by Editorial Staff.

297. CONTRACTS—884. Parol Evidence—Parol condition subsequent can never be shown to defeat written contract.

Appeal from Common Pleas.
Decree for plaintiff.

Wm. J. Meyer, Portsmouth, for Kent.
Bannon & Bannon, Portsmouth, for Rowley et.

FULL TEXT.

MAUCK, J.

The parties hereto entered into a contract in writing as follows:

"Portsmouth, O., 5/14/26.

This is to certify that we, Ernest Rowley and Kate Rowley, agree to exchange their real estate located on Gallia St. Sciotoville & known 5946 with W. S. Kent for ninety nine & ¾ acres located in Licking Co., Ohio, and known as the G. W. Boyer farm. We are to assume $5,000.00 on said farm and W. S. Kent is to assume a loan of $3,000.00 on the property at 5946 Gallia St. and to pay us $2,000.00 in cash as the consideration for said property. The transfer to be made as soon as loan can be arranged.

Ernest Rowley
Kate Rowley
W. S. Kent."

On June 10, 1926, the Rowleys made a deed for part of the lands mentioned, received the $2,000 which was to be paid them less a small amount and accepted a deed for the Licking County farm. They entered on the farm, took the chattel property and sold it, and harvested and disposed of the growing crops. This action is brought by Kent to compel the Rowleys to complete the contract by conveying the rest of the Sciotoville property. The Rowleys resist specific performance solely on the ground that Kent promised that he would obtain for them a loan from a Federal Loan bank for $5,000 on the Licking County farm for thirty-two years at five and one-half or six per cent interest. They ask that Kent be required to arrange a Federal Bank loan or that the deed made by them for a part of their Sciotoville property be cancelled.

We have been more impressed than the defendants seem to have been with the poor bargain made by them but we find no opportunity to relieve them from their own voluntary engagements. The Licking County farm has been sold to pay the $5,000 mortgage thereon. Foreclosure proceedings were pending when the contract was made. It is, of course, futile

to talk of compelling a party to secure a loan from a Federal Land Bank and would be futile if the property was still in the name and possession of Rowley. It is equally useless to pray for a cancellation of the deed made by the Rowleys to a part of the Sciotoville property for that conveyance was made to one Lawson who is not a party to this action. No other remedy has been suggested whereby the parties might be restored to their former status if it were found that the Rowleys had been inequitably dealt with.

The contract of exchange is an illiterate instrument but it expresses a contract. One of the mysteries of human nature is that people who know that they do not know enough to shoe a hores or pull a tooth feel themselves perfectly competent to judge of the effects of a contract that may deprive them of all their property. The Rowleys now claim that Kent verbally agreed to secure for them a Federal Farm Bank loan to take up the $5,000 mortgage. Possibly he did so. That, however, is not the contract. In that instrument the Rowleys agreed to assume that mortgage. The proposed oral testimony concerning the so-called federal loan would contradict that term of the contract. The concluding provision of the contract, "the transfer to be made as soon as loan can be made," can not relate to a loan on the farm for the moitgage on that was assumed by Rowley. It must have meant a loan to be secured on the Sciotoville property by Kent to raise money to pay the $2,000 coming to Rowley.

Sometimes parol testimony is effectively employed to show extrinsically a condition precedent to the operation of the written instrument and that the written instrument fails because of the failure of the condition precedent. A parol condition subsequent can never be shown, however, to defeat the written contract. Page on Contracts, Section 2179. The evidence of the Rowleys in this case tended to show such subsequent condition. The farm mortgage was assumed by the Rowleys. It could only practically be assumed by deed. If Kent agreed to get the desired loan at all he could only have intended to get it after the transaction was completed and not as a condition precedent to the transfer.

A like decree to that entered in the Common Pleas will be entered here.

Middleton, J., concurs. Sayre, PJ., not sitting.)

---

## SHEETS et v. FOSTORIA UN. STOCK YARDS CO.

Ohio Appeals, 6th Dist., Wood Co.

No. 410. Decided Dec. 12, 1927.

**First Publication of this Opinion.**

Syllabus by Editorial Staff.

677. JUDGMENTS AND DECREES—557. Fraud and Deceit—147. Bills, Notes and Checks.

1. Where, within four days after judgment by confession on cognovit note, motion to set aside, supported by affidavit setting up facts which would constitute valid defense, is filed, such motion should be sustained. Common Pleas has full control over its orders and judgments during term, only limitation being that there shall be no abuse of discretion.

Error to Common Pleas.
Judgment reversed.

Benjamin F. James, Bowling Green, for Sheets et.

J. E. Kelly, Bowling Green, for Fostoria Stock Yards Co.

FULL TEXT.

RICHARDS, J.

On July 9, 1927, the Common Pleas Court rendered a judgment by confession for $557.00 in favor of The Fostoria Union Stock Yards Company against Charles L. Sheets, Charles Sheets and Lash Sheets on a joint and several cognovit note. Four days thereafter, and at the same term of court, the defendant Lash Sheets filed a motion to set aside the judgment and for leave to file an answer and cross-petition which he proffered. The grounds set forth in the motion are that the promissory note sued upon was obtained by fraud and duress, that nothing was due thereon and that there was no consideration for the note. The motion was supported by an affidavit of Lash Sheets in which he states that the note was made without any consideration and was made solely through threats, intimidation and duress exercised by the plaintiff upon the makers and that in order to secure the signatures of the makers the plaintiff claimed that Charles L. Sheets had obtained property by false pretenses and fraudulent misrepresentations which affiant says is untrue and that unless the note was signed and other moneys paid in the sum of $1,000, said Charles L. Sheets would be immediately sent to the penitentiary, but that if the note was signed, further proceedings would be abandoned. The affiant states that said proceedings were abandoned and that neither at the time of the making of the note or at any other time had there been obtained any property by false pretenses or otherwise, and that the signing of the note was caused through said threats, intimidation and duress.

It appears to this court that the matters stated in the affidavit, if established by evidence, would constitute a defense to the note and that the judgment rendered during the same term of court and four days before the motion was filed should have been set aside. The Common Pleas Court has full control over its orders and judgments during the term at which they are rendered and full power to set judgments aside during the term, the only limitation being that in so doing there shall be no abuse of discretion. Smith v. Smith, et al., 24 Ohio App., 407.

The application to set aside the judgment was made by Lash Sheets only. The order refusing to set aside the judgment as to him is reversed and the cause remanded for further proceedings.

(Williams and Lloyd, JJ., concur.)

# STATE SUPREME COURT
## NEW CASES, PROCEEDINGS AND DECISIONS

## Weekly Report of
## NEW CASES DOCKETED

20897—Norfolk & West. Rd. Co. et v. Gale et. Motion for Franklin Appeals to certify. Henry Bannon, Portsmouth, and James I. Bouger, Coumbus, for ptff; Simeon Nash, Columbus, for deft.

20898—Euphrat et v. Kingsley. Motion for Montgomery Appeals to certify. W. S. Rhotehamel and J. L. Jacobson, Dayton, for pltff; Kusworm & Shaman, Dayton, for deft.

20899—Lake Shore Elect. Ry. Co. v. Christensen. Motion for Ottawa Appeals to certify. True, Crawford & True, Port Clinton, and Harry Rimelspach, Sandusky, for pltff; Stahl & Price, Toledo, for deft.

20900—Upper Arlington Co. v. Lanman. Motion for Franklin Appeals to certify. L. F. Sater and E. D. Howard, Columbus, for pltff; C. J. Pretzman and John H. Nau, Columbus, for deft.

20901—W. S. Tyler Co. v. Rebic. Motion for Cuyahoga Appeals to certify. Tolles, Hogsett & Ginn, Cleveland, for pltff; M. C. Harrison, Cleveland, for deft.

### January 26, 1928
20933—Sutton State Bank of Attica, v. Mathew. Motion for Crawford Appeals to certify. L. C. Feighner, Bucyrus, for pltff; Chas. F. Shaber, Bucyrus, for deft.

20934—Helle v. Pub. Util. Com. of Ohio. Error to the Public Utilities Commission of Ohio. Ed Shover, Columbus, for pltff; E. C. Turner, Atty. Genl., and A. M. Calland, of Columbus, for deft.

### January 27, 1928
20935—Rucker v. State. Motion for leave to file pet. in er. to Hamilton Appeals. Simon L. Leis and O. W. Hardin, Cincinnati, for pltff; C. P. Taft and C. E. Basler, Cincinnati, for deft.

### January 28, 1928
20936—Detroit, Tol. & I. R. R. Co. v. Abbie Nelson Brecht. Motion for Clark Appeals to certify. C. B. Longley and W. Visscher, Detroit, Mich., for pltff.

20937—Boyer, Supt. v. Edgar M. Halyburton. Error to Stark Appeals. Henry W. Harter and H. C. Graybill, Canton, for pltff; Fisher, Leahy & Weintraub, Canton, for deft.

### January 30, 1928
20938—Helm, Exr. v. Provident Mutual Life Ins. Co. Motion for Hamilton Appeals to certify. J. W. O'Hara and P. S. Phillips, Cincinnati, for pltff; Maxwell & Hamsey, Cincinnati, for deft.

20939—Heim, Exr. v. Provident Mutual Life Ins. Co. Motion for Hamilton Appeals to certify. J. W. O'Hara and P. S. Phillips, Cincinnati, for pltff; Maxwell & Ramsey, Cincinnati, for deft.

20940—Akron (City), Ohio v. Nagy. Motion for Summit Appeals to certify. C. B. Macdonald and A. B. Underwood, Akron, for pltff; Lahrmer & Hadley, Akron, for deft.

20941—Western & Southern Life Ins. Co. v. Kelly. Motion for Jefferson Appeals to certify. C. A. Vail, Steubenville, for pltff; Cohen & Gardner, Steubenville, for deft.

## PROCEEDINGS OF
## SUPREME COURT

### GENERAL DOCKET
#### February 1, 1928
20673—Breuer v. Pub. Util. Com. Order affirmed. Dock. 5 Abs. 506.

### MOTION DOCKET
20652—State v. McCune. Motion for lv. to fi. pet. in er. to Cuyahoga Appeals. Overruled. Dock. 5 Abs. 490.

20692—Rehklan et v. Bourne. Motion for Lucas Appeals to certify. Allowed. Dock. 5 Abs. 522.

20755—Kuncic v. Cleveland Railway Co. Motion for Cuyahoga Appeals to certify. Overruled. Dock. 5 Abs. 656.

20852—E. Kaufman v. State. Motion for Stark Appeals to certify. Overruled. Dock. 5 Abs. 815.

20853—Farley v. State. Motion for Stark Appeals to certify. Overruled. Dock. 5 Abs. 815.

20878—Collari v. State. Motion for lv. to fi. pet. in er. to Cuyahoga Appeals. Overruled. Dock. 6 Abs. 29.

20893—Worthley, admr. v. Gillmore et. Motion for Sandusky Appeals to certify. Allowed. Dock. 6 Abs. 29.

20895—Metropolitan Life Ins. Co. v. Contie, admr. Motion for Stark Appeals to certify. Allowed. Dock. 6 Abs. 29.

20896—Columbus, Delaware & Marion Elect. Ry. Co. v. Marion county et. Motion for Marion Appeals to certify. Allowed. Dock. 6 Abs. 29.

20896—Columbus, Delaware & Marion Elect. Ry. Co. v. Commissioners of Marion county et. Overruled. Motion to dis. pet. in er. fi. as of rt. Overruled. Dock. 6 Abs. 29.

20897—Norfolk & Western Ry. et v. Gale et. Motion for Franklin Appeals to certify. Allowed. Dock. 6 Abs. 77.

20898—Euphrat et v. Kingsley et. Motion for Montgomery Appeals to certify. Overruled. Dock. 6 Abs. 77.

20899—Lake Shore Elect. Ry. Co. v. Christansen. Motion for Ottawa Appeals to certify. Overruled. Dock. 6 Abs. 77.

20900—Upper Arlington Co. et v. Lanman et. Motion for Franklin Appeals to certify. Overruled. Dock. 6 Abs. 77.

20901—Tyler Co. v. Rebic. Motion for Cuyahoga Appeals to certify. Allowed. Dock. 6 Abs. 77.

20905—Balt. & O. Rd. Co. v. Henry G. Metz. Motion for Cuyahoga Appeals to certify. Overruled. Dock. 6 Abs. 29.

20906—Harper v. Heights Construction Co. Motion for Cuyahoga Appeals to certify. Overruled. Dock. 6 Abs. 29.

20907—F. Harten, et v. H. Gayer. Motion for Erie Appeals to certify. Overruled. Dock. 6 Abs. 45.

20908—J. Daly v. Savage. Motion for Clinton Appeals to certify. Overruled. Dock. 6 Abs. 45.

(Continued from Page 83)

tiff assumed the risk of his injury in continuing the use of the defective harness, known to him to be such, yet we are unable to render a final judgment in favor of the plaintiff in error because the trial court was not asked to

pass upon the sufficiency of the petition or the evidence.

The judgment will be reversed and the cause remanded for further proceedings.

(Williams and Lloyd, JJ., concur.)

---

(Continued from Page 82)

2. General verdict for railroad without further finding must be affirmed, though court erred in charging on one of the issues presented. Hodnicki v. Pere Marquette Ry. Co., OA. 6 Abs. 63.

### 460. EQUITY.

1. Court of, has power and duty to allow counsel fees.
2. Equitable issues can be submitted to jury.
3. Essential character of equitable litigation not changed by fact that case is tried to jury. Koelble, Admr. v. Runyan et, OA. 6 Abs. 41.

### 465. ERROR PROCEEDINGS.

Discharge of accused in criminal case on demurrer to indictment is such judgment as supports proceedings in error. State v. Blair, OA. 6 Abs. 58.

Whether trial court committed prejudicial error in sustaining defendant's motion for directed verdict, must be determined on evidence contained in transcript. McKenzie v. Indust. Com., OA. 6 Abs. 60.

### 473. ESTATES.