The Miller Agency Co. *v.* Greene.

(Decided January 19, 1931.)

*Messrs. Brady, Yager, O'Connor, Bebout & O'Connor,* for plaintiff in error.
*Messrs. Fraser, Hiett, Wall & Effler,* for defendant in error.

Richards, J.   Hiram M. Greene, defendant in error, was an employe of the Miller Agency Company and was discharged on May 7, 1928. He brought an action in the court of common pleas, claiming that the discharge was wrongful and unlawful, and recovered a verdict and judgment of $4,200. As grounds for reversal, it is claimed that there should have been a directed verdict for the defendant, the Miller Agency Company, and that the judgment is against the weight of the evidence and excessive.

In answer to the claim that the court erred in failing to direct a verdict, it is sufficient to say that no motion was made in the trial court for a directed verdict.  A court cannot reverse a judgment for fail-

ing to direct a verdict and enter final judgment for the opposite party when no motion therefor has been made, as has already been held by this court. *Woodman* v. *Stahl*, 28 Ohio App., 464, 162 N. E., 705; *Cincinnati Traction Co.* v. *Durack, Admx.,* 78 Ohio St., 243, 85 N. E., 38, 14 Ann. Cas., 218.

The evidence in the bill of exceptions discloses that the Miller Agency Company has been engaged in the business of preparing and making presentments of advertising matter for insertion in magazines and use by other advertising agencies, and that in the prosecution of this work they had employed Hiram M. Greene, a man of much experience in that line. Indeed, his employers credit him with unusual ability in his chosen occupation. He had worked for the Miller Agency Company for a year or two prior to 1927, and had given such satisfaction that his employers were anxious to renew the contract with him and insisted that it should be for a term of two years. Thereupon a written contract was entered into dated March 10, 1927, to extend his employment for a period of two years from January 1, 1927, and this contract made it Greene's duty to prepare plans and advertising copy and to aid in the solicitation of advertising accounts and in the creation of advertising or merchandising plans for clients and prospective clients of the company. It provided that he was to work for the company at least four days of each week, and such additional time as should be deemed necessary in case of extraordinary circumstances, and fixed a compensation of $75 a week as a retainer fee, or salary, and allowed certain commissions, and guaranteed a minimum compensation of $6,000 a year.

There are no intricate questions of law involved in this litigation, the controversy being one of fact as to the existence or non-existence of grounds sufficient to justify the discharge of the employe.

One of the profitable clients of the Miller Agency Company, and perhaps its most profitable client, was the Toledo Rex Spray Company. It had been doing an extensive, nation-wide advertising through the Miller Agency up to the fall of 1927, at which time it decided to discontinue magazine advertising of that character. Greene had been engaged more than half the time in the preparation of advertising and in making presentments of advertising for the Rex Spray Company. Miller, who had been abroad, returned in April, 1928, and found the affairs of his company not in the best financial condition, which condition existed mainly for the reason that the Rex Spray Company had discontinued nation-wide magazine advertising. He informed Greene of the situation of the company, and stated that if there was no change they should have to ask him to leave their employ, but gave him at that time no reason for requiring a severance of their relations except the existing financial conditions. On May 7, 1928, the company gave him written notice to leave, without particularizing as to the grounds further than the general statement that he had failed to perform his obligations under the contract and had willfully disregarded its terms. The real issue on the trial was whether Greene was discharged because of the financial condition of the company or because he had been disobedient or disloyal to it. The evidence on that issue is very extensive, and in decided conflict and it would serve no useful purpose to review it.

The most serious claim made against Greene was his action with reference to certain advertising matter for the National Wooden Desk Manufacturing Association. An agency, operated by Mackenzie, Goldbach & Berdan, was in touch with that company and negotiating for that advertising, and a young man in that company, a friend of Greene, asked him to help make a presentment to be submitted to the National Wooden Desk Manufacturing Association. Information regarding this advertising appears to have reached Greene in confidence, and under such circumstances that he did not feel at liberty to inform his employer thereof. He assisted in the preparation of certain advertising matter and made two trips to Chicago for Mackenzie, Goldbach & Berdan. But nothing came of the attempt of that company to secure the advertising, and no money whatever was paid to Greene except for the traveling expenses incurred by him. Greene testified that he considered it quite unethical to inform his employer regarding the possibility of securing the advertising of the National Wooden Desk Manufacturing Association, in view of the circumstances under which he had received the information. He was only required, under ordinary circumstances, to work four days a week for the Miller Agency Company, and would be entitled for the remainder of the time to do such other work as he chose, providing it was not inconsistent with his duties to his employer. He evidently believed in good faith that he could not, with propriety, inform the Miller Agency Company regarding the possibility of securing that advertising, and testified that there was a certain amount of decency and respectability in business.

The jury was carefully and fully instructed regarding this matter and was properly charged that an employe was bound to exercise the utmost good faith toward his employer, and not act in antagonism or opposition to his interests; that he must be loyal and faithful to the interest of his employer and could not serve a private interest of his own in opposition to it; and that it would be a breach of duty to render services conflicting with his duties to his employer. The matter having been so fully and clearly submitted to the jury for its determination, and the jury having found by its verdict that the conduct of Greene did not amount to disloyalty or disobedience, and the evidence being in conflict as to whether the discharge was caused by the financial condition in which the employer found itself or by reason of claimed disobedience or disloyalty of the employe, we cannot find that the verdict of the jury is not sustained by sufficient evidence. It is true, there was some friction between the parties on other matters, but nothing more serious than commonly arises between employers and employes.

After the discharge of Greene, he was unable to secure profitable employment except to a very limited extent. About eight months remained of the term for which he had last been employed. It does not appear that the amount of the judgment is excessive.

Finding no prejudicial error, the judgment will be affirmed.

*Judgment affirmed.*

WILLIAMS and LLOYD, JJ., concur.